1

U.S. DISTRICT COURT—N.D. OF N.Y.
FILED
JUN 27 2001
AT_____O'CLOCK_____
Lawrence K. Baerman, Clerk—Binghamton

472

1  UNITED STATES DISTRICT COURT

2  NORTHERN DISTRICT OF NEW YORK

3  --------------------------------------------------------

4  UNITED STATES OF AMERICA,

5              -versus-                    00-CR-187

6  TERENCE McDANIEL,

7                      Defendant.

8  --------------------------------------------------------

9

10        TRANSCRIPT OF PROCEEDINGS held in and for the

11  United States District Court, Northern District of New York,

12  at the Federal Building and Courthouse, 15 Henry Street,

13  Binghamton, New York, on THURSDAY, April 12, 2001,

14  before the HON. THOMAS J. McAVOY, United States

15  District Court Judge, PRESIDING.

16

17

18

19

20

21

22

23

24

25

1    APPEARANCES:

2

3    FOR THE GOVERNMENT:

4    UNITED STATES ATTORNEY'S OFFICE

5    BY:   MIROSLAV LOVRIC, AUSA

6          Binghamton, New York

7

8

9    FOR THE DEFENDANT:

10   ALBERTO EBANKS, ESQ.

11   20 Vessey St.

12   New York, New York

13

14

15

16

17

18

19

20

21

22

23

24

25

1           THE CLERK:  United States of America versus
2   Terence McDaniel, a/k/a T-Money, 2000-CR-187.  Please come
3   forward and state appearances for the record.
4           MR. LOVRIC:  Miroslav Lovric for the
5   government.  Morning, your Honor.
6           THE COURT:  Morning, Mr. Lovric.
7           MR. EBANKS:  Alberto Ebanks, 20 Vessey
8   Street, New York, New York.  Good morning, your Honor.
9           THE COURT:  Morning, Mr. Ebanks.  How are
10  you, Mr. McDaniel?
11          THE DEFENDANT:  How you doin'?
12          THE COURT:  All right.  Mr. Ebanks, the Court
13  knows that you've been able to review the presentence report
14  because not only have I received your thorough sentencing
15  memorandum but I also received some letters on behalf of
16  Mr. McDaniel, and let me ask you this:  Have you had a
17  chance to go over the presentence report with Mr. McDaniel?
18          MR. EBANKS:  We've discussed it, your Honor.
19          THE COURT:  Mr. McDaniel, did you read the
20  presentence investigation report?
21          THE DEFENDANT:  Yes, sir.
22          THE COURT:  And did you talk that over with
23  your attorney, Mr. Ebanks?
24          THE DEFENDANT:  Yes, sir.
25          THE COURT:  Mr. Ebanks, did you find any

USA vs McDaniel                                    4

1   factual inaccuracies in the report that we should discuss?

2              MR. EBANKS:  Nothing that I didn't address in

3   my objection letter, your Honor.

4              THE COURT:  All right.  How about you,

5   Mr. McDaniel, any factual inaccuracies in the report that

6   you found?

7              THE DEFENDANT:  No, sir.

8              THE COURT:  You're really objecting to the

9   way the scoring and the implications that are drawn from the

10  facts, not from the facts themselves?

11             MR. EBANKS:  I'm objecting to the

12  enhancements, two of the enhancements in particular, your

13  Honor.  Those being the one for a minor being involved in

14  this conspiracy and the other objection being the managerial

15  role that's attributed.

16             THE COURT:  Well, they're certainly fact

17  driven and so therefore I guess I was wrong about what I

18  said.  You are objecting to the facts that are in the

19  report.  You're saying that the report contains material

20  that's just not true?

21             MR. EBANKS:  Well, it's really a matter of

22  who's considering the facts and who's presenting the facts.

23  I know that the government will take no position on a few of

24  those objections, is that right, Mr. Lovric?

25             MR. LOVRIC:  Yeah.  I believe that's correct.

1   I think it's how we -- how we apply the facts I think to the
2   law and obviously to the Court's view of the guideline
3   scoring that's probably at issue here.
4              THE COURT:  All right.  Well, the Court will
5   then wait until I've heard from everybody before I make a
6   determination about those matters.  As I understand it, the
7   government is not going to make any kind of motion in this
8   case, is that right?
9              MR. LOVRIC:  That's correct, your Honor.
10  There's no departure motions made by the government.
11             THE COURT:  All right.  Mr. Ebanks, did you
12  want to tell the Court what it is that the Court should
13  consider when I sentence Mr. McDaniel?
14             MR. EBANKS:  Yes, sir, I certainly would,
15  your Honor.  Present in court today is my client's entire
16  family.  His father's a bishop in church.  His brother is a
17  minister.  His family, your Honor.
18             THE COURT:  Good family, that's for sure.
19             MR. EBANKS:  Exactly.  That's exactly -- that
20  helps me make my next point.  While my client stands before
21  the Court facing some very serious charges, probably in the
22  darkest hour of his life, I do believe that he's a
23  salvageable individual and I believe that if the Court
24  extends some mercy today that he will be able to firmly
25  resettle into the community.  God knows he has a lot of

USA vs McDaniel                                                    6

1    support, a lot of people behind him that will be present to

2    make sure of that when he is released from prison, your

3    Honor.

4              THE COURT:  That's the best thing he's got

5    going for him.

6              MR. EBANKS:  Exactly.  A few other matters

7    that I wanted to address, your Honor.

8              THE COURT:  Sure.

9              MR. EBANKS:  One is -- obviously it's a

10   delicate matter I'd rather not get into in open court but

11   the fact that I believe my client has done everything within

12   his power since the time of his arrest and indictment to

13   make matters better for himself and to assist the government

14   with other pending matters.  The fact that certain things

15   did not work out well, unfortunately, will not inure to his

16   benefit.  Put another way, inures to his detriment.  But the

17   desire, willingness to really assist the government was

18   there and if the Court needs to hear more details on that,

19   I'd be glad to share it.

20             THE COURT:  I don't think I do but I will

21   consider that.  I think he did try to impart information to

22   the government.

23             MR. EBANKS:  On very serious matters, not

24   that this one is not a serious matter, but on very serious

25   matters.

1          THE COURT:  The Court will take that into
2    consideration.

3          MR. EBANKS:  I also want the Court to
4    realize, I'm really preserving the record at this point,
5    your Honor, that the underlying felony conviction for a
6    narcotics offense here involves the possession, not sale,
7    the possession of two small bags of marijuana and 13 baggies
8    of crack which I believe had a total weight of seven grams.
9    I am not sure, and I do not have authority with me today to
10   support what I'm going to say, so I preface everything by
11   saying that I'm not convinced that's within the intended
12   amount, your Honor, of the statute in terms of considering
13   prior narcotics felonies as a prerequisite for the 20 year
14   mandatory minimum.

15         While we are on the issue of what should the
16   mandatory minimum be in this case, your Honor, his prior
17   conviction is an overt act in this indictment.  Arguably
18   this is all part of one systematic and continuous course of
19   conduct.

20         THE COURT:  He wasn't scored for that, that's
21   because it's related conduct.

22         MR. EBANKS:  Exactly.

23         THE COURT:  And the Court realizes that but
24   he was sentenced to a year.

25         MR. EBANKS:  He was sentenced to year and at

1    the very least, your Honor, what I will do this morning is

2    ask you to give him credit because the Bureau of Prisons

3    will not give him credit for that one year that he did on

4    that matter.  That he served.

5                    THE COURT:  Under 4A1.3?

6                    MR. EBANKS:  Yes, your Honor.

7                    THE COURT:  Okay.  That's interesting.  Did

8    you do a year, Mr. McDaniel?

9                    THE DEFENDANT:  Yes, sir.  I did eight

10   months.

11                   THE COURT:  Eight months?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  All right.  What else would you

14   like to take up?

15                   MR. EBANKS:  I know that these charges will

16   not bode well with the Court.  I'm going to ask the Court to

17   extend mercy today to consider the extraordinary

18   circumstances.  The fact that since his indictment, as you

19   know, he developed diabetes.  He's currently receiving 90

20   units of insulin per day, your Honor.  The fact that he

21   basically has three disabled people in his immediate family.

22   His father, his mother, and his brother who, as you see, is

23   paralyzed today in Court.  I believe that he will be an

24   asset to his family in the future despite what has happened

25   in the past.  I'm going to ask the Court to extend mercy

1   today, your Honor.

2                   THE COURT:  Did you want to discuss any of

3   the specific offense characteristics or the adjustment for

4   the role or either one?

5                   MR. EBANKS:  I think I'll defer to the

6   government on some of those matters.

7                   THE COURT:  And stop.

8                   MR. EBANKS:  And come back to me, your Honor.

9                   THE COURT:  All right.  Mr. Lovric, what

10  would you like to say on behalf of the government?

11                  MR. LOVRIC:  Judge, with respect to

12  Mr. McDaniel and the initial discussions that we had, I

13  agree with Mr. Ebanks.  There's no question in our minds

14  that Mr. McDaniel did everything in his power to try to earn

15  a 5K, to enter into some type of a 5K cooperation agreement.

16  In fact, without getting into the details but yet giving the

17  Court I think a very good understanding, Mr. McDaniel did,

18  in fact, sit down with our office and the Oneida County

19  District Attorney's Office and spoke to all of our

20  investigators and their investigators about a very serious

21  matter which he had some direct knowledge about and through

22  no really fault of his or through no fault of -- anyone's

23  fault really, the matter simply has not gone anywhere and

24  it's kind of a complicated story and issue but, once again,

25  looking at it from Mr. McDaniel's point of view, he went out

1   and tried to assist and cooperate in an area that law

2   enforcement was very much interested in and he did

3   everything that he could from his end of it and it's simply

4   a matter that things didn't work out in terms of being able

5   to provide him a plea and cooperation agreement as opposed

6   to a plea agreement.  I think it certainly does show

7   Mr. McDaniel's frame of mind after being arrested and

8   charged and indicted in this case.

9              I think it does give some indicator of where

10  he is right now in his life and what he's obviously trying

11  to do, to take steps forward as opposed to steps backwards.

12  And in light of that it certainly, I think, is a factor for

13  the Court to consider that Mr. McDaniel hasn't simply said,

14  you know, go ahead and prove it.  You know, I'm going to put

15  you to the task government.  In fact, from the very start he

16  has always indicated to us he was ready, willing to plead

17  guilty, accept responsibility for his conduct and to be

18  punished for it and to help in whatever ways that he could.

19  Our office and law enforcement -- so from day one, his

20  attitude has always been the right attitude, if I can put it

21  that way.

22              And in the overall picture it's simply that

23  things were not able to be worked out enough so that he

24  would be eligible for any kind of a departure motion.  That

25  is somewhat of a driving force because of the mandatory

1   minimums and obviously the guidelines but beyond that where

2   we are today in terms of the guideline enhancements, as I've

3   indicated to Mr. Ebanks, the firearms enhancement is

4   something the government believes applies.  I indicated to

5   Mr. Ebanks there's really no way that we can say that it's

6   not applicable.  We think it is.  In our view, and it's only

7   our view, we think that the evidence of at least the

8   possession of firearms is overwhelming such that we have to

9   advocate for its application.  We think it does apply.  In

10  the big picture, I'm not sure that will be a driving force

11  for where Mr. McDaniel or the Court finds he ends up.  I

12  don't think that enhancement's going to be the entire

13  driving force.

14              THE COURT:  Well, it's a problem because it

15  takes a way any chance he might have to be considered under

16  5-C1.2.  So --

17              MR. LOVRIC:  That's --

18              THE COURT:  -- to me it's a big thing.

19              MR. LOVRIC:  Okay.

20              THE COURT:  I have to agree with you that at

21  least from the information the Court has, that certainly

22  that enhancement is appropriate but the Court doesn't feel

23  good about that.  That's what -- it is what it is.

24              MR. EBANKS:  Your Honor, I should just use

25  this opportunity to state that after further discussion we

USA vs McDaniel                                    12

1   will withdraw our objection to the gun enhancement.

2              THE COURT:  All right.  That's fine.  You

3   want to address something else.

4              MR. LOVRIC:  The other two enhancements, your

5   Honor, as I told Mr. Ebanks, the minor individual that's

6   mentioned.  There's a little bit of history behind that and

7   the best way I can put that is, equitably speaking, I think

8   there's a very good argument for its non -- nonapplication

9   or not being applied.  Mr. Lamar Hood was actually indicted

10  in this indictment, first indictment.  Law enforcement did

11  not know that he was a minor and that's because in prior

12  criminal activity and contact with law enforcement, Mr. Hood

13  used a different date of birth which made him an adult.  So

14  if you want to put it, in a sense, Mr. Hood actually

15  hoodwinked everybody, including the government and law

16  enforcement.  We indicted him because we felt everything we

17  had in front of us he was an adult and when he committed the

18  offenses he then was eligible for prosecution.  It was after

19  he was brought in and debriefed and almost as a sort of

20  aside, his attorney sort of mentioned this and then we

21  looked into it and actually had to go back and get his birth

22  certificate to see that he was, in fact, a minor at the time

23  of the commission of the offenses.  He subsequently was

24  dismissed in this indictment and pled guilty to state

25  charges in connection with this prosecution.  I put that

1   before the Court because I think it's at least an equitable

2   type of factor to consider when considering whether --

3              THE COURT:  Yeah, it is.  The government

4   didn't know.  How would a defendant be expected to know

5   under the same terms and conditions and circumstances?  The

6   thing the Court doesn't know about that enhancement though,

7   does it establish the state of mind knowledge?  Maybe in

8   this case the Court should look at it from that perspective.

9              MR. LOVRIC:  And that's exactly right.  But I

10  wanted the Court to be aware of those factors in terms of --

11  I don't think it's a situation obviously where you have a

12  ten or twelve year old individual being utilized in a

13  narcotics conspiracy.

14             The other enhancement adjustment as far as

15  managerial and any type of organizational, I think it's --

16  it's best for me to describe our position the following,

17  Judge:  As I've indicated to the probation department and

18  also to Mr. Ebanks, in our view Mr. McDaniel is subject to

19  the 20 year mandatory minimum based on the prior felony

20  conviction, filing of that statement of that conviction.  In

21  our view, the government's position is that the Court,

22  unless there's something that we don't see, the Court is

23  bound at least to the 20 year mandatory minimum.  I've

24  talked to Mr. Ebanks and actually a couple of other counsel

25  because different people have raised it.  What happens in a

1   situation where the underlying felony, for which there is a
2   filing, is a related underlying felony?  I've done a little
3   bit of research in the Second Circuit and have been unable
4   to find anything that indicates that the circuit has
5   directly ruled on this issue.  It's not to say it's not
6   there.  I'm not aware of it.  I recall a number of years ago
7   reading, it was either a Fifth or Seventh Circuit case, and
8   they took on this exact same issue and I thought they did a
9   very, very good job of analyzing the pros and cons of does
10  the statute mean to apply to related prior felony
11  convictions for purposes of a statutory enhancement?  And as
12  I indicated, I don't remember if it was the Fifth or Seventh
13  Circuit.  In this case it would probably be about three or
14  four years old.  They sided with that, it does apply.  I
15  remember discussing this with Grant Jaquith, our narcotics
16  chief, and we were sort of just kicking around these
17  thoughts and ideas and analyzing the case.  I think there
18  are at least a couple of circuits out there, not the Second,
19  that have ruled that the enhancement does apply even if it
20  is a related prior felony conviction for a related act
21  within the conspiratorial actions that the person is now
22  being sentenced for.  The Second Circuit, I don't know.
23              THE COURT:  That's a pretty harsh result.
24  Let me ask you this:  Are there any other circuits that
25  ruled the other way?

USA vs McDaniel                                    15

1           MR. LOVRIC:  I'm not aware of any, Judge.

2           THE COURT:  Maybe we can take a look at that.

3           MR. EBANKS:  I know the Seventh Circuit has

4    ruled exactly as Mr. Lovric said.  Obviously we are not

5    bound by the Seventh Circuit.

6           THE COURT:  That's right.

7           MR. EBANKS:  I believe that this is unsettled

8    law.  I and others have poured significant hours into

9    researching the issue.  The fact that I stand here today

10   before the Court with no authority is proof positive that I

11   was unable to find something in this circuit that's right on

12   point.

13          THE COURT:  Is there anything in any other

14   circuit from district courts that have gone the other way?

15   I'd like to look at that analysis.

16          MR. EBANKS:  Nothing that I found that -- I

17   do believe, though, your Honor, that the argument that the

18   underlying felony offense here is not what was contemplated

19   when you consider the ten year enhancement which, in fact,

20   it is from a ten year mandatory minimum to 20 years.  The

21   fact that this is a possession case and not a case of sale.

22   The fact that we are talking really about poultry amounts

23   and I don't want to minimize the underlying offense or the

24   prior conviction.  I think that is an issue that has been

25   tackled and I believe that that has prevailed in the past.

THE COURT: Well, now are you telling me that the Court can consider that as a part of a basis for the 5K2 motion that the Court is considering right here this morning? And I would have to agree with that position under the Koon case and others that say there may be things that the guidelines didn't contemplate and maybe the government will argue, well, this is one of them that they did contemplate and I can understand how that argument would play out.

But I think under the particular circumstances of this case, and making a 5K2 analysis, the Court can include that particular situation from a couple of aspects. Number one, even though the sentence was a year as I've mentioned, the fact that there were very little quantity of narcotics, very little narcotics involved, of course the crack cocaine, even though it was seven grams, is not really helpful because of the government's position with respect to that particular drug. But it is a very smaller quantity of the drug. Very small quantity. And the Court can certainly consider that. It considers and grants a 5K2 downward departure motion.

MR. EBANKS: It's the fact that there is a substance abuse problem here. I believe that it's at the very heart of the matter. The Department of Probation addressed it in their report and I feel comfortable stating

1   that I know that to be the case unless -- I'm making

2   reference to page 36.

3               THE COURT:  Paragraph 36?

4               MR. EBANKS:  Yes, your Honor.

5               THE COURT:  The problem with that is you can

6   recommend the comprehensive inpatient, comprehensive in

7   prison drug program.  The problem with the gun enhancement,

8   they don't give him the time off.  He can get the program,

9   they don't give him the time off like they would, with the

10  gun enhancement.  If they want to give him the time, I

11  certainly wouldn't object to that.  I would hope to see that

12  would happen if he was successful in entering and completing

13  that program.  That I would certainly recommend that they

14  take the time off but I don't think they do when you've got

15  a gun enhancement.

16              MR. LOVRIC:  Judge, just in summary, in terms

17  of the overall picture, I think it would be fairly safe to

18  say that in our opinion the 20 year imprisonment would be a

19  fair resolution in terms of an appropriate sentence.  I

20  think it's more than fair to Mr. McDaniel.  Obviously I

21  think it's also just in terms of all the other factors,

22  taking into consideration given that Mr. McDaniel is looking

23  at such a long period of time, I think that would be a fair

24  resolution of the case.

25              THE COURT:  What about the role argument?

1    I'm going to -- I'm going to grant your application with

2    respect to the minor role adjustment because I'm not going

3    to hold him responsible for having a minor involved in this

4    under the circumstances of this particular case.  But you

5    have raised the fact of his particular role in the offense

6    as a manager, leader, etcetera.  The Court thinks there's

7    ample facts here to suggest that should apply.

8               MR. EBANKS:  Well, Judge, let me say this:

9    Unlike cases where there's an organization with a name and

10   there's a hierarchy, without -- you can see my catch 22

11   here -- without getting into any specifics or making any

12   agency admissions, your Honor, what I would say is this was

13   a band of loosely connected people with no particular

14   organization.  So it's very hard to attribute any leadership

15   role to anyone when you're not talking about a real

16   organized group of people to begin with.  That's probably

17   the best attempt that I could make to be blunt on that

18   subject.

19              THE COURT:  Okay.  Well, you know, the Court

20   appreciates that all structures are not the same and you can

21   have an organizational structure that's very informal and

22   loose but still fall under the -- which the Court must

23   interpret the guidelines -- and the Court will take that

24   into consideration but the Court believes that enhancement's

25   appropriate in this particular case.

USA vs McDaniel                                    19

1          Mr. McDaniel, what did you want to say to me,
2   sir, before I sentence you?
3          THE DEFENDANT:  I would just like to say that
4   I'm sorry for, you know, the pain that I caused my family
5   and caused society as a whole and I would like just to get
6   on with my life and come home and be a father to my children
7   and be a part of my family again.  Be a productive member of
8   society as I know I can be.  And I just ask the Court for
9   its mercy and to show some mercy, if it will.
10          THE COURT:  Mr. Ebanks, do you know any
11   reason I shouldn't sentence your client?
12          MR. EBANKS:  No, your Honor.
13          THE COURT:  Do you know any reason I
14   shouldn't sentence you, Mr. McDaniel?
15          THE DEFENDANT:  No, your Honor.
16          THE COURT:  You were raised correctly by a
17   good family and certainly have a lot of good in you and you
18   have potential good in you and you're a bright guy.  There's
19   no reason why you can't do what you want to do in the
20   future.  It's just unfortunate you got caught up in this
21   situation, became a part of it.  That was your fault.  You
22   have to accept responsibility for that.  It's a bad thing.
23   Drugs are a curse to our society.  It's ruining this
24   country.  Ruining this country and the war on drugs that we
25   are participating in, and I guess I'm nobody to speak for

1   the government, I don't speak for the government, I'm

2   speaking for me, I don't think it's doing any good at all.

3   We need more money for education.  For prevention of getting

4   the drugs on the streets.  I don't know what the answer is

5   but I know what we are doing now is not the answer.  But I

6   do think you made an effort to turn yourself around.  I have

7   confidence in you.  I think you're going to be okay when you

8   come out.  All I can do is consider certain factors when I

9   sentence you that I will consider to try to get the sentence

10  to a reasonable basis.

11              Did I ask you was there any reason I

12  shouldn't sentence you?

13              THE DEFENDANT:  Yes, you asked me.

14              THE COURT:  Okay.  Sorry.  My mind is trying

15  to run through these factors I might consider.  First of

16  all, the Court is going to consider the fact that you

17  recently did develop diabetes and that you must be a Type I.

18              THE DEFENDANT:  Yes, I am.

19              THE COURT:  I know there's some disagreement

20  about that in the probation.  You're taking insulin?

21              THE DEFENDANT:  I take insulin three times a

22  day and sometimes four.

23              THE COURT:  But you just recognized this

24  condition recently.

25              THE DEFENDANT:  I got real sick in December

1   and I went and they drew blood and my sugar was like 600.

2   They sent me out for blood and then they called and said

3   that I needed dose of insulin.  I've been taking it ever

4   since.  Take 50 units in the morning, 28 in the afternoon,

5   and as needed.

6                  THE COURT:  So you measure your sugar every

7   day?

8                  THE DEFENDANT:  Four times a day.

9                  THE COURT:  What's it running now?

10                 THE DEFENDANT:  This morning it was 174.

11  Last night it was 400.

12                 THE COURT:  That's very good.  I guess it is

13  Type II, I apologize, not Type I.  I'm considering that.

14  I'm considering the fact that you have two of your family

15  members, your mother and father, who are seriously

16  debilitated by illnesses.  I'm considering the fact that

17  since you've been incarcerated you've been trying to do your

18  best to rehabilitate yourself.

19                 As I indicated I'm going to not apply the

20  enhancement for the use of a minor which is going to bring

21  you down to a 39 from a 41.  But the Court, of course, is

22  going to depart downward even farther under 5K2 because of

23  the combination of factors that the Court has been

24  discussing under the Koon case and its progeny.  The Court

25  believes that it should depart downward from the otherwise

USA vs McDaniel                                    22

1   applicable guidelines because the Court is finding that your
2   case is outside the heartland of the guidelines based upon
3   the combination of circumstances involved.
4          The Court finds that your base offense level
5   is a 36, probation officer found your total offense level to
6   be a 41, with your criminal history category a 1, which
7   would make your guideline imprisonment range from 324 to 405
8   months.  But the Court's going to find that your total
9   offense level, instead of 41 should be a 39, before applying
10  the 5K2 downward departure motion.  That would make your
11  range from 262 to 327 months.  But the Court is going to
12  grant both what the government suggested and defense counsel
13  and depart downward to 240 months under 5K2.
14         So, upon your plea of guilty to count one,
15  and based upon the unusual combination of circumstances,
16  family ties and responsibilities, physical health, it is the
17  judgment of this Court that you are hereby committed to the
18  custody of the Bureau of Prisons to be imprisoned for a term
19  of 240 months.  Upon your release from imprisonment --
20  that's taking into account the eight months also that you
21  did on the related charge.
22         Upon release from imprisonment you shall be
23  placed upon supervised release for ten years.  While on
24  supervised release you shall not commit another federal,
25  state or local crime and shall comply with the standard

1   conditions that have been adopted by the Court and the

2   following special conditions:  You shall submit to alcohol

3   and drug testing as directed by the probation officer.  You

4   shall submit to substance abuse evaluation and complete

5   treatment as directed by the probation officer and

6   contribute to the cost of services rendered in an amount to

7   be determined by the probation officer based on your ability

8   to pay or the availability of third party payments.

9           It's further ordered you pay to the Clerk of

10  the Court $100 as a special assessment.

11          After considering your financial condition

12  and your family responsibilities and your economic

13  conditions and sentence imposed, the Court does not impose

14  any fine or cost of incarceration or supervised release

15  except as stated.

16          Within the confines of the plea agreement,

17  you have a right to appeal the sentence under certain --

18  very limited circumstances.  You have to file your appeal

19  within ten days of the date of this sentence.

20          Is there anything to dismiss, Mr. Lovric?

21          MR. LOVRIC:  Yes, your Honor.  We move to

22  dismiss all remaining counts as to Mr. McDaniel.  In

23  addition we move to dismiss the forfeiture allegation as to

24  Mr. McDaniel.

25          THE COURT:  The Court will grant that

1    application to dismiss the forfeiture allegations and all
2    remaining counts against Mr. McDaniel.
3                    Good luck to you, Mr. McDaniel.
4                    THE DEFENDANT:  Thank you, sir.
5                    MR. EBANKS:  Thank you, your Honor.
6                    THE COURT:  That circuit laws turns around,
7    let me know about that.
8                    The Court will recommend he be placed in a
9    facility as close to New York City as possible.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

25

C E R T I F I C A T I O N

        I, VICKY A. THELEMAN, RPR, CRR, United States
Court Reporter in and for the United States District Court,
Northern District of New York, do hereby certify that I
attended at the time and place set forth in the heading
hereof; that I did make a stenographic record of the
proceedings had in this matter and cause the same to be
transcribed; that the foregoing is a true and correct copy
of the same and the whole thereof.

                                     VICKY A. THELEMAN, RPR, CRR
                                     United States Court Reporter
                                     US District Court - NDNY

Dated:  June 20, 2001